## ADDISON v ADDISON

Ohio Appeals, 2nd Dist, Montgomery Co

No 1188. Decided June 9, 1933

John Egan, Dayton, for plaintiff in error.
Jacobson & Durst, Dayton, for defendant in error.

## OPINION

By HORNBECK, PJ.

The plaintiff instituted her action for alimony on the grounds of gross neglect of duty and extreme cruelty. As extreme cruelty is not a ground for alimony under the statute, it follows that the court in granting alimony to the plaintiff found that the defendant was chargeable with gross neglect of duty. The defendant cross petitioned for divorce which, upon the evidence was denied. The error is prosecuted to the decree of the trial court granting alimony to the plaintiff.

There are two questions in the case. First: Was there any evidence whatever tending to establish gross neglect of duty? Second: If so, did it support the finding of the trial court or was it manifestly against the weight of the evidence? We are in doubt if there is any evidence tending to show gross neglect of duty and we are convinced that if there is any evidence tending to support the charge that the court erred in holding that it was established by a preponderance of the evidence. We have read this record with care and are satisfied that gross neglect of duty is not established. The gist of the complaint of the plaintiff against the defendant relates to

his alleged misconduct with a Mrs. Edwin Griffith, who was employed with the defendant at the factory of Reynolds & Reynolds in the City of Dayton. The parties, at the time of the filing of plaintiff's petition, had been married for many years, during which time they had had minor difficulties but had not separated. The husband was steadily employed, working regularly and overtime, insofar as the record discloses; was frugal, of good habits, never mistreated his wife in any manner except as hereinafter discussed. The gross neglect of duty charged must be found either in a failure to properly provide for the plaintiff or in the so-called misconduct of the defendant with Mrs. Griffith.

It appears in the evidence that the plaintiff regularly gave the defendant $5.00 per week; that he gave her additional sums of money at various times; a short time before the separation he divided $1250.00 building and loan certificates giving plaintiff $750.00 thereof; that he provided the home in which they lived, and that she, during the greater portion of their married life and much of the time, took boarders; that she took the total income from this source and employed it as she desired; that she had charge accounts at several of the stores in the City of Dayton. There is some evidence that her relatives and his relatives, from time to time gave her clothing, but there is nothing to support a finding that this was done because of any necessity or because she would have been without had the clothing not been presented to her. The trial court does not base its finding upon any neglect in the nature of failure to provide or to furnish proper support. The court epitomizes its conclusion from the record in this language:

"From all the testimony in this case the court cannot think otherwise than that another woman came in this man's interest and that he neglected his wife in his interest of the second woman."

"The court cannot compel these parties to live together but the court should not be guilty of encouraging the breaking up of homes without the required legal evidence."

It thus appears that the court predicated its finding upon gross neglect by the husband of his wife in that he bestowed his care and attention upon another woman. The record does not, in our judgment, support this conclusion by any proper inference. Briefly, the plaintiff objected to the association of her husband with Mrs. Griffith. It is disclosed that upon occasions when he would work overtime, as there was no telephone available to him, he, as was the practice at the factory, had Mrs. Griffith call his wife to tell her that he would not be home. This was an accommodation to the wife as well as her husband and certainly indicated no neglect nor impropriety. It also appears that upon one occasion, more than two years before the divorce action was instituted, the defendant, upon invitation of Mrs. Griffith, went to her home one evening as he says to listen to a new radio. He states that there were others present and there is nothing to controvert it. On this occasion plaintiff had left her home for the evening and was absent therefrom during the period that her husband was away. Obviously, she was not neglected by the absence of her husband from their home on this night. But, granting that this was an impropriety and the husband does not insist otherwise, he testifies, and it is not denied, that he told his wife of the occurrence, agreed that he should not again call at the home of Mrs. Griffith, and that thereafter he did not do so. It also appears that upon several occasions he walked from the factory, six or seven squares to a place where Mrs. Griffith took the street car to her home, and upon one occasion plaintiff came upon them at this street corner. The occurrences of this occasion are in the record. However, the defendant explains that the place where he took his car was conveniently reached by walking from work with Mrs. Griffith. But granting that there was affection between the defendant and Mrs. Griffith, we are unable to determine that this misconduct amounted to neglect of duty. These occasions wherein he walked to the street car with Mrs. Griffith took little of his time. It does not appear that he was delayed in any manner in reaching his home or that his wife would have received any more of his attention or time if he had not walked to the street car line. These occurrences which we have discussed seem trivial but they are the substance of the plaintiff's case against the defendant. The matters which we have presented came to the attention of the plaintiff and no doubt affected her materially and it is possible that in one aspect they might be considered extreme cruelty but they do not constitute nor take on the character of gross neglect of duty.

Finally, the difficulty between the parties became somewhat acute, caused in part, no doubt, by the inordinate jealousy of the

wife, because, insofar as the record discloses there was no such relation between the defendant and Mrs. Griffith as would have justified her extreme concern and continued discussion of the subject.

Finally, the night before the husband left his home, the wife abstracted $200.00 from his pocket being all he had in cash excepting $5.00. On this occasion she came into his room and into his bed for the first time for many weeks. Theretofore the husband had given to his wife $750.00 of $1200.00 which he had in a Building & Loan Association. Both parties left the next day, the wife to institute her action. The husband did not have the opportunity to return' to his home because the wife sought and secured an injunction against his coming on to the premises. To do so she made affidavit that she was fearful that he might molest her, although she testifies that she never feared him.

The principal occurrence and the one upon which much stress is laid happened a short time before the action for alimony. Defendant's mother had an apartment for rent in connection with her home. Mrs. Griffith, because of a cut in her wages, was looking for a cheaper place to live. The husband told Mrs. Griffith of the apartment which his mother had to rent and she called upon the mother and rented the apartment. Mrs. Griffith has a fifteen year old daughter who lived with her. There is no evidence whatever to disclose that defendant ever called upon Mrs. Griffith at her apartment or was ever in her company alone during the period that she has lived in his mother's apartment. Defendant's mother gave a birthday party for him and among other guests invited Mrs. Griffith. On that occasion it is testified that the plaintiff, with her brother, drove to the home of defendant's mother, stood outside, and looked through the window. She and her brother testify that on this occasion they noticed Mrs. Griffith step by the chair in which defendant was seated and pass her hand along the back of the chair or his shoulders and retire to the kitchen. Thereafter, that Mrs. Griffith and defendant moved into an adjacent room and Mrs. Griffith lighted a cigarette for the defendant and thereupon he patted her upon the back.

We believe that we have set out rather fully the testimony from which gross neglect of duty must be found. It will be noted that nothing which the defendant is proven to have done could constitute any serious impropriety. The occurrence just stated happened at the home of defendant's mother where he had a right to be, during a period when he was restrained from going to his own home.

The amount of the alimony awarded the plaintiff is very reasonable as is the award of the household furniture to the plaintiff, because the defendant admitted that he had given it to his wife. Notwithstanding the fairness of the award we are confronted with the legal proposition whether or not a cause of action supporting the alimony decree is proven.

The available authorities in Ohio are all to the effect that the facts proven in this case do not constitute gross neglect of duty.

"The neglect must be gross; that is there must be something more than mere neglect,—some circumstances of aggravation, or wilfulness." 14 O. Jur., 394. Citing Faust v Faust, 30 O. L. Rep., 67 and eight other nisi prius cases.

Judge Pugh of the Franklin County Common Pleas Court in discussing the elements of gross neglect of duty under our statute says: In Re Gross Neglect, 8 O. D., 701:

"The term 'gross' used in the statute and describing the kind of neglect of duty which makes a cause of action was intended to express something; it is not a redundant word. It means gross neglect and not mere neglect or partial neglect or even total neglect of duty. It means more than either of these words of fact. This has been decided so often that it is almost a work of supererogation to decide again."

We hesitate to disturb a finding of the trial court, especially in a divorce or alimony suit but upon most careful analysis of this testimony, we are constrained to say that the finding and judgment of the trial court decreeing that the defendant was guilty of gross neglect of duty toward the plaintiff was manifestly against the weight of the evidence. The judgment of the trial court will therefore be reversed and cause remanded.

KUNKLE and BARNES, JJ, concur.

ON MOTION FOR REHEARING

Decided June 26, 1933

BY THE COURT

Submitted on application of defendant in error for a rehearing.

The brief in support of the application for rehearing proceeds upon the theory that our decision is in conflict with the syllabus in **Hawker v Hawker, 14 Abs 113,** wherein is announced the often stated rule controlling reviewing courts on a reversal of a case on the weight of the evidence. We recognize that this court cannot reverse upon mere difference of opinion but that the evidence when fully and fairly considered must disclose that the judgment of the trial court is manifestly against the weight thereof. The record, in this case, in our judgment, as indicated in our former opinion, supports the finding that the judgment of the trial court was manifestly against the weight of the evidence. As we indicated in our former opinion the evidence given full weight, in its most favorable light falls short of sufficient proof of gross neglect of duty.

Our attention is directed to a number of excerpts from the record and counsel has, in a most capable manner, drawn inferences favorable to the contention of the defendant in error. The inferences so drawn are possible and all are called to our attention in the original brief. We discussed practically all of them in our former opinion.

At no time have we undertaken to condone or excuse anything that the plaintiff in error has done, nor do we pretend to say that he acted properly at the times and in the situations appearing in the record. He admittedly was guilty of impropriety. But we are required to pass upon the evidence in the record as it relates to the requisites of proof of gross neglect of duty under the law.

A fair consideration of all the record is convincing to the court that the evidence does not support the judgment by the requisite degree of proof. The application for rehearing will be denied.

HORNBECK, PJ, KUNKLE and BARNES, JJ, concur.